MGD

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Frank Garza Martinez, III,

          Plaintiff,

v.

City of Mesa, et al.,

          Defendants.

No.  CV 16-02793-PHX-DLR (DKD)

**ORDER**

**(UNDER SEAL)**[1]

Plaintiff Frank Garza Martinez III, who is currently confined in Arizona State Prison Complex-Lewis, brought this civil rights case pursuant to 42 U.S.C. § 1983.  (Doc. 1.)  Pending before the Court are Defendant Burkett's Motion for Summary Judgment (Doc. 37) and Defendants Tapia and Hermes' Motion for Summary Judgment (Doc. 40). Plaintiff opposes both Motions.[2]  (Doc. 48.)

---

[1] The Magistrate Judge granted Defendants' Motion to Seal Exhibits 3 and 4 to their Joint Separate Statement of Facts ("DJSSOF") so as to limit disclosure of sensitive patient-identifying information and irrelevant medical information.  (Doc. 41.)  Because this Order cites to DJSSOF ¶¶ 9-11, which rely, in part, on Exhibits 3 and 4, this Order is currently filed under seal, but the Court will direct the Clerk of the Court to automatically unseal this Order in 14 days unless Defendants file a motion to seal showing compelling reasons for sealing each particular page and line number(s) they claim should be sealed. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (the policy of promoting access to public documents dictates that only that information which there is good cause or a compelling reason to seal should actually be sealed.).

[2] The Court provided notices to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response.  (Docs. 43,

The Court will grant in part and deny in part the Motions.

## I.      Background

On screening of Plaintiff's Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated claims of excessive force and unreasonable search in Counts II and III related to an alleged second body cavity search and directed Defendants Mesa Police Department ("MPD") Detectives Tapia and Hermes and Nurse Practitioner Burkett to answer.[3]  (Doc. 5.)  The Court dismissed the remaining claims and Defendants. (*Id.*)

## II.      Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a

---

44.)

[3] Plaintiff actually labeled Count III as a claim of "sexual battery," but the Court's screening Order construed Plaintiff's claim as one of excessive force and unreasonable search under the Fourth Amendment.  It does not appear that Arizona common law provides for a sexual battery claim in a civil action, and Plaintiff did not thereafter seek reconsideration of the Court's screening Order or to amend his Complaint to assert a battery claim.

reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III.    Facts**

Defendants filed a Joint Separate Statement of Facts in support of their respective Motions for Summary Judgment. (Doc. 38.) In his Responses to Defendants' Motions, Plaintiff asserts that "at this point in time the Plaintiff (nonmovant) does not have, and cannot present the facts and law necessary to justify [his] opposition." (Doc. 47 at 2; Doc. 48 at 2.) In Affidavits attached to his Responses, Plaintiff asserts that he was trying to figure out how to depose a witness to the body cavity search, Nurse Heidi Panczner, whom Plaintiff avers will corroborate his version of events. (Docs. 47 and 48 at 5-6.) Plaintiff provides no further information about his attempt to depose Panczner but the Court notes that Plaintiff filed a motion to depose Panczner (Doc. 50), which the Magistrate Judge denied as untimely because it was filed three months after the close of discovery and nearly two weeks after Plaintiff filed his Responses to the Motions for Summary Judgment. (Doc. 55.)

Because Plaintiff did not file a separate statement of facts or controverting statement of facts, the Court will, in its summary judgment analysis, construe the verified

Complaint (Doc. 1) as an affidavit in opposition to the summary judgment motions. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a pro se plaintiff's verified pleadings must be considered as evidence in opposition to summary judgment); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence).

Because the parties tell significantly different versions of what happened to Plaintiff, the Court will set forth each party's version separately.

### A.    Plaintiff's Facts

Plaintiff asserts in his Complaint that on April 22, 2015, Defendants MPD Detectives Tapia and Hermes took Plaintiff to Desert Banner Hospital and told Plaintiff they had a search warrant to allow medical personnel to conduct a body cavity search. (Doc. 1 at 6, 8.)  Tapia and Hermes were in the exam room along with Defendant Nurse Practitioner Burkett and two other female medical staff.  (*Id*. at 6.)  Plaintiff initially refused to cooperate with the search but Burkett told him to "either let me check real quick or I'm gonna get the biggest guy in here and he's gonna shove his whole hand up your [expletives omitted]!"  (*Id*. at 8.)  Plaintiff told the Detectives that she could not talk to him that way and that her statement constituted sexual assault, but the detectives shrugged and one said, "well then you better start complying."  (*Id*.)  Plaintiff was scared but submitted to the exam and nothing was found.  (*Id*.)  Burkett and Hermes then left the room.

Ten to fifteen minutes later, Burkett and Hermes returned with a male medical staff member and told Plaintiff they needed to check again.  (*Id*. at 6, 8.)  Plaintiff said they could "if they got another warrant."  (*Id*.)  After arguing with Plaintiff for about ten minutes, the male hospital employee "jumped" on Plaintiff and pinned him down, while Burkett "attempted to shove her entire hand into Plaintiff's rectal cavity" as Plaintiff screamed and begged her to stop and "beg[ged] Det. Tapia and medical personnel to stop

[and] that she was hurting him." (*Id*.)  Plaintiff asserts that "she found contraband but the entire process was in violation of Plaintiff's civil rights." (*Id*. at 6.)

Plaintiff states that he suffered "serious physical trauma that lasted several months" and he "is still suffering from severe mental trauma."[4] (*Id*. at 8.)

### B.  Defendants' Facts

In April 2015, Plaintiff and his brother sold methamphetamine and heroin to an undercover police officer. (Doc. 38 (DJSSOF) ¶ 1.)  On April 20, 2015, Judge Alysson Abe granted a search warrant submitted by the MPD, finding that probable cause existed to conclude that Plaintiff and his brother had contraband on their persons or in a residence at 1245 South Lesueur, Mesa, Arizona. (*Id*. ¶ 2.)  The MPD executed the search warrant on April 22, 2015. (*Id*. ¶ 4.)  While executing the search warrant, MPD found in a bathroom an empty condom wrapper, part of a torn condom, and folded parchment paper containing a dark residue in the toilet bowl. (*Id*. ¶ 6.)  These items led the MPD to believe that someone had wrapped an illicit substance in a condom and inserted it into a body cavity either orally or through the anus. (*Id*.)  Based on that belief, the MPD sought and obtained an amended search warrant to seize any contraband contained inside the bodies of Plaintiff or his brother including "illicit substances and paraphernalia.  Cavity search to be conducted by a medical professional at a medical facility." (*Id*. ¶ 8.)  At his deposition, Plaintiff admitted that when the MPD arrived at the residence, he hid heroin in his anal cavity by inserting the heroin into a condom. (*Id*. ¶ 5; Doc. 38-2 at 32 (Pl. Dep. June 27, 2017).)

Plaintiff was taken to Banner Desert Medical Center in Mesa, Arizona, where he was admitted to the Emergency Department at 3:29 p.m. (Doc. 38 ¶¶ 9-10.)  An x-ray of Plaintiff's abdomen showed a "4 cm oval radiolucent focus overlying the rectum, possibly representing the reported foreign body." (*Id*. ¶ 11.)  Based on the x-ray result, Dr. Scott Schleifer, the admitting physician, asked Defendant Burkett to perform a digital

---

[4] As noted, the Court's screening Order only found that Plaintiff stated a claim as to the second search. (Doc. 7.)

anal exam to retrieve the foreign body.  (*Id*. ¶ 12.)  Burkett understood that the foreign body possibly contained an illicit substance and that MPD had obtained a search warrant for the procedure.  (*Id*.)

Burkett entered the exam room where Plaintiff was being held, introduced herself to Plaintiff, and explained that she was there to perform an anal exam and remove the foreign body.  (*Id*. ¶ 13.)  Plaintiff initially refused to consent to the anal exam, but when Burkett explained that a foreign body filled with illicit substances in the anus presents a variety of risks including an inadvertent overdose if the foreign body ruptured, Plaintiff consented to the exam and retrieval by Burkett.  (*Id*. ¶¶ 13-14.)  Burkett then put gloves on and Plaintiff laid on his side with his knees up to his chest, "one of the common positions patients adopt for consensual digital anal exams."  (*Id*. ¶ 15.)  Burkett used "substantial lubricant and began a gradual exploratory penetration of Plaintiff's anus— both of which were to minimize the discomfort associated with the exam."  (*Id*.)

A few minutes into the exam, Burkett felt the foreign body in Plaintiff's anus but realized she could not retrieve it because it was lodged too far up his anus.  (*Id*. ¶ 18.)  Burkett states in her Declaration that she withdrew her hand for a few moments and asked Plaintiff if she could make another attempt to retrieve the foreign body, but he refused.  (Doc. 38-2 at 53 ¶ 13.)  According to Defendants, "[a]t no point did a second nurse or Banner Desert employee enter the examination room where Ms. Burkett was performing the exam and aid Ms. Burkett in conducting the exam."  (Doc. 38 ¶ 20.)  Burkett then left the exam room and reported to Dr. Schleifer that she had not been successful in retrieving the foreign body.  (*Id*. ¶ 21; Doc. 38-2 at 53 ¶ 15.)

After Burkett left the exam room, Plaintiff agreed to have a bowel movement and the condom with the illicit substance was retrieved intact and Plaintiff was released to policy custody at 4:52 pm.  (Doc. 38 ¶ 22.)  Burkett states that after she reported to Dr. Schleifer that she was unsuccessful, she did not see or speak to Plaintiff again and when she reported to work the next day, she learned that Plaintiff had passed the foreign body with a bowel movement.  (Doc. 38-2 at 54 ¶ 16.)  Burkett avers that "at no point did the

police officers or any other individual hold [Plaintiff] down and force him to comply with a second retrieval attempt" and that there was "no other nurse or individual in the room that performed the exam with [Burkett]." (*Id*. at 53 ¶ 14.)

Defendants Hermes and Tapia did not touch Plaintiff during the body cavity search, did not participate in the search, or direct how it was to be performed. (Doc. 38 ¶ 17.) Both Hermes and Tapia assert in affidavits that they did not see any person other than Burkett perform an examination of Plaintiff's anal cavity, that they did not see any medical professional engage in conduct that would constitute sexual assault, and that neither Burkett "nor any other person at the hospital held Plaintiff down in order to force him to comply with the examination of his anal cavity." (Doc. 38-2 at 64 ¶¶ 14-16; Doc. 38-2 at 68 ¶¶ 15-17.)

Plaintiff pleaded guilty to four felonies for the sale or transportation of heroin and methamphetamine, for promoting prison contraband, and for possession or use of heroin. (Doc. 38 ¶ 23.)

## IV.    Legal Standards

### A.    Excessive Force

The Fourteenth Amendment's Due Process Clause, and not the Eighth Amendment, applies to the use of excessive force against pretrial detainees. *Kingsley v. Hendrickson*, ___ U.S.___, 135 S. Ct. 2466, 2473 (2015); *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002). "[T]he Fourth Amendment sets the applicable constitutional limitations for considering claims of excessive force during pretrial detention." *Gibson*, 290 F.3d at 1197 (internal citation and quotation omitted). In this context, force is considered excessive if the officers' use of force was "objectively unreasonable" in light of the facts and circumstances confronting them, without regard to their mental state. *Kingsley*, 135 S. Ct. at 2472-73; *see also Graham v. Connor*, 490 U.S. 386, 397 (1989) (applying an objectively unreasonable standard to a Fourth Amendment excessive force claim arising during an investigatory stop). The Court must balance the nature and quality of the intrusion against the countervailing governmental interests at

stake. *Graham*, 490 U.S. at 396. The failure to intervene can support an excessive force claim where a bystander-officer has a realistic opportunity to intervene, but fails to do so. *Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (police officers can be liable for failing to intercede "when their fellow officers violate the constitutional rights of a suspect or other citizen," but only if they had an opportunity to intercede) (internal citation and quotation omitted).

### B.       Fourth Amendment Search

Excluding searches based on reasonable suspicion for weapons or dangerous contraband in the jail context, an arrestee may only be subject to a body cavity search "if there is probable cause to believe that he has secreted the item sought in a body cavity," and, if no exigent circumstances are present, a warrant is required. *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1449–1450 (9th Cir. 1991). That is because "an intrusion into the human body implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *United States v. Fowlkes*, 804 F.3d 954, 961 (9th Cir. 2015) (quoting *Winston v. Lee*, 470 U.S. 753, 761 (1985)). "[W]hile visual cavity searches that do not require physical entry into a prisoner's body are generally permissible without a warrant during the jail intake process, physical cavity searches generally are not." *Id.* (holding that police officers' warrantless, forcible seizure of an item from the plaintiff's rectum by non-medical personnel was unreasonable under the Fourth Amendment).

To determine whether a search was reasonable, the court must consider (1) "the scope of the particular intrusion," (2) "the manner in which it is conducted," (3) "the justification for initiating it," and (4) "the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Whether a warrant was first obtained is one factor in determining the reasonableness of a search as well as (1) "the extent to which the procedure may threaten the safety or health of the individual," (2) "the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity," and (3) "the community's interest in fairly and accurately determining guilt or innocence." *Winston v. Lee*, 470 U.S. 753, 761-62 (1985). "This Circuit has clearly recognized that

the use of excessive force during a search makes that search unreasonable under the Fourth Amendment." *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004) (holding that the plaintiff "had a Fourth Amendment right to be free from excessive force during the execution of the search warrant") (citing *Chuman v. Wright*, 76 F.3d 292, 293 (9th Cir.1996)).

## V.      Discussion

### A.      Validity of the Warrant

Defendants Tapia and Hermes have presented evidence that the MPD obtained Search Warrant No. SW2015-003492 dated April 20, 2015 from Maricopa County Superior Court Judge Alysson H. Abe.  (Doc. 38-2 at 13-14.)  The warrant states that the judge was satisfied that probable cause existed to believe that certain property or things, including heroin and methamphetamine, were in the possession of or concealed on Roy Garza Martinez or at 1245 South Lesueur in Mesa, Arizona.  (*Id*. at 13.)

The Affidavit submitted by Detective Donnelly in support of the Search Warrant states that on several dates in March and April 2016, Donnelly was working undercover and purchased heroin and methamphetamine from Roy Garza Martinez and an unknown Hispanic male.  (Doc. 38-2 at 19-20.)  Donnelly asserted that probable cause existed to conclude that Roy Garza Martinez and the unknown Hispanic male subject were selling illicit drugs out of the residence at 1245 South Lesueur.  (*Id*. at 16-20.)

In an amendment to the Affidavit, Donnelly wrote that after Search Warrant 2015003492 was served on April 22, 2016, he identified the second dealer as Frank Garza Martinez (Plaintiff), who had previous convictions for Aggravated Assault with a Weapon, Aggravated Assault Serious Physical Injury, and Possession of Drug Paraphernalia.  (*Id*. at 10-11.)  Donnelly asserted that during the search of the residence on April 22, 2016, they found in a bathroom toilet bowl an empty condom wrapper, the top half of a torn condom, and folded parchment paper containing a dark residue.  (*Id*. at 11.)  Donnelly wrote that those items were indicative of a common practice among drug dealers and others "to wrap illicit substances in condoms or other non-porous containers

and insert them into their bodies typically through the anus or orally." (*Id*.) Donnelly asserted that Roy and Frank Martinez were the final occupants to exit the residence during the execution of the search warrant, and because of their incarceration history and items located in the toilet bowl, he requested a full body cavity search of each one "in order to remove potential contraband." (*Id*.) Donnelly said that "[l]icensed medical professionals will conduct the search at a medical facility and remove any contraband located within" Plaintiff and/or Roy Martinez. (*Id*.) Maricopa County Superior Court Judge David V. Seyer granted the request in Search Warrant No. SW2015-003618, including a search for "[a]ny Contraband contained inside the bodies of Roy Martinez and/or Frank Martinez including but not limited to illicit substances and paraphernalia. Cavity search and extraction to be conducted by a medical professional at a medical facility." (*Id*. at 2, 4.)

Search Warrant No. SW2015-003618 clearly authorized the search of Plaintiff's body cavities by a medical professional at a medical facility. Defendants Tapia and Hermes argue that Plaintiff's subsequent guilty plea to hiding the heroin on his person and taking it into a law enforcement facility "conclusively establishes the probable cause for the body cavity search." (Doc. 40 at 5, citing *Wisniski v. Ong*, 382 P.2d 233, 234 (Ariz. 1963) (convictions "conclusively establish the existence of probable cause")).) The record evidence supports that the Search Warrant was supported by probable cause.

To the extent Plaintiff is asserting that the Search Warrant did not cover the second search of his anal cavity, which Defendants argue never took place, Plaintiff has not presented any authority establishing that Defendants were required to obtain a second warrant for that search, which, under Plaintiff's version of events, occurred within minutes of the first search. Search Warrant No. SW2015-003618 clearly specified that the search was for "[a]ny Contraband contained inside the bodies of Roy Martinez and/or Frank Martinez including but not limited to illicit substances and paraphernalia. Cavity search and extraction to be conducted by a medical professional at a medical facility." The Search Warrant did not limit the medical professional to one try to obtain the

contraband. Therefore, to the extent a second search did take place, the evidence supports that the second search was pursuant to a valid warrant supported by probable cause, and the Court will dismiss this claim as to all Defendants.

### B. Defendant Burkett

Burkett does not argue that her conduct is not attributable to the State for purposes of section 1983 liability. Therefore, the Court will not address the issue and will assume for purposes of this Order that her actions are attributable to the State. *See, e.g., George v. Edholm*, 752 F.3d 1206, 1215 (9th Cir. 2014) (private action may be attributed to the state "if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself") (internal citations and quotations omitted).

Burkett argues that the anal cavity search was performed pursuant to a valid warrant, was reasonable and in accordance with accepted medical practices pursuant to Plaintiff's consent, and that she is entitled to qualified immunity. (Doc. 37 at 6-13.)

The search was conducted at Banner Desert Medical Center in Mesa, Arizona, where an x-ray confirmed there was a foreign object in Plaintiff's anal cavity. After the x-ray, Defendant Burkett, a Nurse Practitioner, performed a digital exam of Plaintiff's anal cavity and located a foreign object there. The Court's screening Order found that the initial search did not state a claim, but that Plaintiff's allegations regarding a second search did state a claim. The issue then is whether the second search of Plaintiff's anal cavity was reasonable and without excessive force.

Burkett argues that "there is not a shred of admissible evidence that substantiates Plaintiff's accusation that a second retrieval attempt ever occurred" and that when Plaintiff did not consent to a second search, she left the exam room and told the attending physician that Plaintiff was not willing to submit to a second anal exam. (Doc. 37 at 8.) As the Court has noted, however, Plaintiff's Complaint is verified under penalty of perjury, thus constituting evidence, and he asserts there was a second anal exam that he did not consent to and that Burkett conducted the second exam in a manner that hurt him.

Also, as the Court noted, the Court must accept the non-moving party's facts as true and at summary judgment it is not the Court's role to make credibility determinations. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) ("If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true"); *see also McLauglin v. Lui*, 849 F.2d 1205, 1208 (9th Cir. 1988) (the nonmoving party's sworn statements on a central fact in dispute are direct evidence that preclude summary judgment); *Robichaud v. Theis*, 858 F.2d 392, 394 (8th Cir. 1988) (upholding a jury award for the plaintiff where the defendant had introduced medical records to show the plaintiff was a hypochondriac who exaggerated her injuries, finding "the jury is the appropriate body to determine the veracity of opposing claims").

Accepting Plaintiff's version of events as true, a jury could find that being pinned down by a male hospital staff member and Burkett attempting to put her entire hand up his rectum while he screamed in pain and for her to stop because she was hurting him supports the conclusion that the search was unreasonable. Among the factors in reaching this conclusion are "emotional and physical trauma, and the availability of alternative methods for conducting the search." *Fowlkes*, 804 F.3d at 963. Here, Plaintiff asserts that he was physically and emotionally traumatized by the second search to which he did not consent. Moreover, an available alternative method for conducting the search would be for Plaintiff to pass the contraband in his stool. Finally, a jury could find that the justification for the second search is lacking in that "there was no emergency requiring instant seizure of the evidence." *Cameron*, 538 F.2d at 258. Plaintiff was already under arrest, in the custody of the MPD and, "like the evidence lodged inside his rectum, was not going anywhere." *Fowlkes*, 804 F.3d at 966.

The Court finds there is a genuine issue of material fact regarding whether a second search of Plaintiff's rectum occurred and whether that search was reasonable under the Fourth Amendment.

### C.    Defendants Hermes and Tapia

Defendants Tapia and Hermes argue that Plaintiff's "self-serving allegations that the exam was uncomfortable and/or painful is insufficient to suggest that NP Burkett disregarded established medical standards and/or used excessive force." (Doc. 40 at 8, citing *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("[a] a conclusory self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact") and *Scottrade, Inc. v. Gibbons*, 590 F. App'x 657, 659 (9th Cir. Oct. 23, 2014) ("speculative assertions in uncorroborated, self-serving affidavits" are insufficient to create a genuine issue of material fact).)   Unlike the affidavits proffered by the plaintiffs in *Nilsson* and *Scottrade*, Plaintiff's facts in his verified Complaint are not speculative and they are sufficiently detailed to create a genuine issue of material fact regarding whether a second search of Plaintiff's rectum in an unreasonable manner took place.   While there are certain circumstances where testimony may be so self-serving that the testimony cannot defeat summary judgment, such circumstances are not present here. *See Nilsson*, 503 F.3d at 952 n.2.   Also, the fact that Plaintiff's testimony is self-serving is to be expected since it is offered in support of his claims.   *See United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999) (Defendant's "affidavit was of course 'self-serving,' . . . [a]nd properly so, because otherwise there would be no point in submitting it."); *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (same).

Defendants Tapia and Hermes also argue that even if Plaintiff alleged that Burkett did not follow appropriate medical standards, they cannot be held vicariously liable for Burkett's alleged use of excessive force during the body cavity exam. (Doc. 40 at 8.)

"Police officers may not avoid the requirements of the Fourth Amendment by inducing, coercing, promoting, or encouraging private parties to perform searches they would not otherwise perform." *George*, 752 F.3d at 1215 (citations omitted).   Police officers may be liable for a private party's search when the police "ordered or were complicit in the search[ ]." *United States v. Sparks*, 265 F.3d 825, 831 (9th Cir.2001),

*overruled on other grounds* by *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) (en banc).

A reasonable jury could conclude that Tapia and Hermes were complicit in the second search of Plaintiff where Plaintiff has submitted evidence that after the first search, Hermes and Burkett returned with a male medical staff member who pinned Plaintiff down while Burkett attempted to insert her entire hand into Plaintiff's rectum, and that Plaintiff screamed and begged Tapia and medical personnel to stop and that Burkett was hurting him.

At this juncture, the Court has two versions of what happened in the emergency room that day. As such, there is a genuine issue of material fact whether there was a second search of Plaintiff and whether Defendants Tapia and Hermes were complicit by standing by while Defendant Burkett used excessive force in that second search.

### D. Qualified Immunity

All three Defendants argue that they are entitled to qualified immunity.

Government officials are not entitled to qualified immunity if the facts "taken in the light most favorable to the party asserting the injury . . . show [that] the [defendants'] conduct violated a constitutional right" and that "the right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *rev'd on other grounds* by *Pearson v. Callahan*, 555 U.S. 223 (2009); *see also George*, 752 F.3d at 1220 (defendants "are entitled to qualified immunity if those rights were not 'clearly established' at the time of the [Fourth Amendment] search") (quoting *Stanton v. Sims*, __ U.S. __, 134 S. Ct. 3, 4-5 (2013) (per curiam); *Ashcroft v. Al-Kidd*, __ U.S. __, 31 S. Ct. 2074, 2083 (2011)). "For a right to be clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *George*, 752 F.3d at 1220 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

For a right to be clearly established there does not have to be a case directly on point; however, "'existing precedent must have placed the statutory or constitutional

question beyond debate.'" *White v. Pauly*, ___ U.S. ____, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. ____, 136 S. Ct. 305, 308 (2017)). Clearly established law "must be particularized to the facts of the case," and "should not be defined at a high level of generality." *White*, 137 S. Ct. at 552 (quotation and citation omitted).

Burkett argues that she is entitled to qualified immunity because she was "temporarily retained by the government to carry out its work . . . ." (Doc. 37 at 11 (quoting *Filarsky v. Delia*, 566 U.S. 377, 377 (2012).) In *Filarsky*, the Supreme Court held that a private attorney retained by a city to assist in investigating a firefighter's potential wrongdoing was entitled to seek the protection of qualified immunity. *Filarsky*, 566 U.S. at 390 (noting that without such immunity "talented candidates will decline public engagements if they do not receive the same immunity enjoyed by their public employee counterparts"). Based on this precedent, Burkett is entitled to seek the protection of qualified immunity alongside Defendants Tapia and Hermes.

### 1.    Constitutional Violation

Hermes and Tapia argue that they are entitled to qualified immunity because they had probable cause to believe Plaintiff was hiding heroin in his anal cavity and there was a warrant to effectuate the heroin's seizure. (Doc. 40 at 5.) The Court, though, has found a question of fact exists as to whether Hermes and Tapia violated Plaintiff's Fourth Amendment rights by standing by while Defendant Burkett performed the second search.

Burkett argues that there was no constitutional violation because the exam she performed was pursuant to a validly executed search warrant, in accordance with accepted medical practices, and with Plaintiff's explicit consent. (Doc. 37 at 13.) There is, however, a question of fact whether Burkett violated Plaintiff's Fourth Amendment rights during the second search. Therefore, the qualified immunity analysis turns on whether the right at issue was clearly established such that Defendants would have known that their conduct during the second search was unlawful. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

- 15 -

### 2.      Clearly Established Right

Defendants' arguments all relate to the first search performed by Burkett and do not address this prong of the qualified immunity analysis as to the second search.

The Ninth Circuit has held "it was clearly established that a private citizen's search may be attributed to the police when the 'the private party act[s] as an instrument or agent of the Government' in conducting the search."  *George*, 752 F.3d at 1220 (quoting *Skinner v. Ry. Labor Execs.' Ass'n,* 489 U.S. 602, 614 (1989)).  "That principle had been repeatedly and clearly applied to doctors' searches of suspects' bodies."  *Id*., (citing *Ellis v. City of San Diego,* 176 F.3d 1183, 1191-92 (9th Cir. 1999) ("applying the Fourth Amendment to doctor and nurse's actions performed based on police instruction"); *United States v. Cameron,* 538 F.2d 254, 256–60 (9th Cir. 1976) (same)).  Here, no reasonable officer would believe that he could stand by while allowing "'private persons to accomplish what [he] is constitutionally forbidden to accomplish.'"  *George*, 752 F.3d at 1220 (quoting *Norwood v. Harrison*, 413 U.S. 455, 465 (1973)).

The Court also held in *George* that "it was clearly established that a search of a patient's body must be reasonable."  *George*, 752 F.3d at 1221 (holding that "forced sedation, anoscopy, intubation, insertion of a nasogastric tube, and bowel evacuation are . . . . at least as intrusive as other searches characterized as highly invasive by courts across the country") (citing cases).  Moreover, "the mere fact that the suspect is concealing contraband does not authorize government officials to resort to any and all means at their disposal to retrieve it."  *Id*. at 1219 (internal citation and quotation omitted).

Viewing the evidence in the light most favorable to Plaintiff, Defendants Tapia, Hermes and Burkett are not entitled to qualified immunity on Plaintiff's Fourth Amendment claim.  Plaintiff's sworn statement is that he was subjected to a second search in which he was forcibly pinned down by a man while Defendant Burkett attempted to insert her entire hand into his rectum as Defendants Tapia and Hermes stood by, despite Plaintiff's screams for help and that Burkett was hurting him.  Any reasonable official would have understood that the manner of the second search, construed in the

light most favorable to Plaintiff, violates the Fourth Amendment.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is withdrawn as to Defendant Burkett's Motion for Summary Judgment (Doc. 37) and Defendants Tapia and Hermes' Motion for Summary Judgment (Doc. 40).

(2)     Defendants' Motions (Docs. 37 and 40) are **granted in part and denied in part**.  The Motions (Docs. 37 and 40) **are granted** to the extent Plaintiff is claiming that the second search was not executed pursuant to a valid warrant.  The Motions (Docs. 37 and 40) **are denied** as to Plaintiff's claims of excessive force and unreasonable search in Counts II and III of the Complaint.

(3)     The Court does not find compelling reasons to issue this Order under seal; accordingly, the Clerk of the Court shall automatically unseal this Order in 14 days, unless Defendants file a motion to seal showing compelling reasons for sealing each particular page and line number(s) they claim should be sealed.

**IT IS FURTHER ORDERED** setting Telephonic Status Conference to Discuss Scheduling a Trial Date for **March 15, 2018 at 9:00 a.m.** The parties who will be trying the case shall appear telephonically by calling **602-322-7530**. At this conference the Court shall set a firm trial date. Counsel who will be responsible for trying this matter shall participate in the Telephonic Status Conference. Counsel for Defendant shall make the necessary arrangements for the conference call. All parties participating in the conference call shall do so via a landline only. The use of cellular phones will not be permitted.

//

//

//

//

//

**IT IS FURTHER ORDERED** that Counsel for Defendant make arrangements with Arizona Department of Corrections to have Plaintiff available for the Telephonic Status Conference.

Dated this 2nd day of March, 2018.

Douglas L. Rayes
United States District Judge

Copy: To all parties